UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FREDERICK J. SCHMIDT,

      Plaintiff,

v.                                Case No. 3:14cv253/LC/CJK

OKALOOSA COUNTY BOARD
OF COMMISSIONERS, et al.,

      Defendants
_____/

## ORDER

      Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a civil rights complaint under 42 U.S.C. § 1983 (doc. 1). From a review of the complaint, it is evident the facts as presented fail to support a viable claim for relief under § 1983. The court will provide plaintiff an opportunity to clarify his allegations in an amended complaint.

## BACKGROUND

      Plaintiff's complaint names as defendants: the Okaloosa County Board of Commissioners; Paul Lawson, Director of Okaloosa County Department of Corrections; Corizon Health Providers, Inc.; and Corizon employees Dr. Delgato, Susan Priddy, and Tamara Taylor. (Doc. 1, p. 2-3). Plaintiff was an inmate of the Okaloosa County Jail at the time the complaint was filed. He has subsequently been released from custody. This order references the following factual allegations.

      Since December of 2011, plaintiff has suffered from an inguinal hernia that "is carcerated" and causes severe pain. (*Id.*, p. 8). Dr. Delgato refused to treat the

condition or plaintiff's pain, stating it was "not serious." (*Id.*). The inguinal hernia "has never been addressed still to the date of this case." (*Id.*). On November 3, 2013, plaintiff underwent "outside" surgery for diverticulitis at the Fort Walton Beach Medical Center, which resulted in the removal of part of plaintiff's colon and intestines. (*Id.*). Since plaintiff has "been arrested here at OCDOC," plaintiff has had an "abdominal hernia coming out of [his] navel" causing extreme pain. (*Id.*). Dr. Delgato refused to have plaintiff "treated or looked at by [plaintiff's] surgeon or a local hospital emergency room." (*Id.*). Plaintiff has "been seen by all nurses at OCDOC including Asst. Med. Supervisor Tamara Taylor" who stated plaintiff looked "yellow." (*Id.*). Plaintiff also suffers from Hepatitis C which he alleges needs treatment. (*Id.*). The medical staff has drawn blood but not conducted a liver biopsy. (*Id.*, p. 9). Plaintiff asked a nurse at sick call about "it" and she said her records "showed nothing." (*Id.*). Plaintiff indicates he was discharged from Fort Walton Beach Medical Center on May 1, 2014, and returned to the Okaloosa County Jail with instructions to return to the emergency room if his condition worsened. (*Id.*). Plaintiff's condition has worsened but he has not received treatment. (*Id.*). Plaintiff alleges Paul Lawson is responsible for his lack of treatment. (*Id.*). In the "Statement of Claims" section of the complaint, plaintiff asserts he has a "right to be treated fairly and medically by an institution of the community of which I live" and a right "not to be tortured with pain and suffering and neglagance [sic] of professional care takers over my welfare." (*Id.*, p. 10). For relief, plaintiff requests that he be taken to Fort Walton Beach Medical Center for surgery. (*Id.*). Plaintiff also wishes "to sue for pain and suffering" and for "payment of my civil [attorney] Dennis Barborizi for his services in this case." (*Id.*).

## DISCUSSION

Injunctive Relief

Plaintiff requests that the defendants send him to Fort Walton Beach Medical Center for surgery. Plaintiff, however, is no longer an inmate of Okaloosa County Jail. Plaintiff's release from custody moots any request for injunctive relief. *Clas v. Torres*, 549 F. App'x 922, 923-24 (11th Cir. 2013) (noting claims for injunctive or declaratory relief are generally mooted by prisoner's release from custody); *Zatler v.Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (inmate's release from prison mooted claim for declaratory and injunctive relief*)*; *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

Eighth Amendment

The government has a constitutional duty to provide minimally adequate medical care to prisoners. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). Nevertheless, not every prisoner claim of inadequate medical care states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed.2 d 251 (1976). To prevail on a deprivation of medical care claim, a prisoner must prove three elements. First, "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235,

1243 (11th Cir. 2003) (internal quotation marks omitted).  The seriousness of the deprivation of medical care is measured by the detrimental effect the deprivation brought upon the person.  *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994).

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish."  *Taylor*, 221 F.3d at 1258.  To establish the requisite intent, "a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'"  *Id.* (quoting *Estelle v. Gamble*, 429 U.S. at 105, 97 S. Ct. at 291).  Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 56 (1994).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Farmer*, 511 U.S. at 842, 114 S. Ct. at 1983.  Disregard of the risk is also a question of fact that can be shown by standard methods.  *Id.* at 846.

Obviously, a complete denial of readily available treatment for a known serious medical condition violates the Constitution.  *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994).  Also, medical treatment can be so slight as to amount to no treatment at all.  Thus, the mere fact that treatment was provided does not end the inquiry.  *See  Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[G]rossly incompetent medical care or choice of an easier but less efficacious course of

treatment can constitute deliberate indifference."); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment."). The prisoner must prove, however, that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain" and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, at 1258. Plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995) (citing *Farmer*, 114 S.Ct. at 1978-79). Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 292; *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Where the inmate has received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d at 1035); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop* at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). Some of the ways in which prison officials might avoid Eighth Amendment liability is to show: (1) "that they did not know of the underlying facts indicating a

sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 114 S. Ct. at 1982-83.

For the final element of an Eighth Amendment claim, a plaintiff must show the officials' deliberate indifference caused the plaintiff's injury. *Taylor*, at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Here, plaintiff has not set out facts to show the second element of a deprivation of medical care claim. Although plaintiff asserts Dr. Delgato failed to treat him, the complaint indicates plaintiff did receive medical care. Medical staff at Okaloosa County Jail referred plaintiff to Fort Walton Beach Medical Center in November 2013 for a surgical operation to treat plaintiff's diverticulitis. Plaintiff also indicates he was "seen by all [the] nurses" at Okaloosa County Jail and was discharged from Fort Walton Beach Medical Center on May 1, 2014. Thus, plaintiff's complaint indicates he was referred to an outside hospital for treatment in addition to treatment from prison nurses. These facts do not suggest the defendants were deliberately indifferent to plaintiff's medical needs. Moreover, in reference to plaintiff's inguinal hernia, Dr. Delgato stated it was "not serious," which suggests the doctor evaluated claimant's condition and determined treatment was not necessary. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs.").

For his hepatitis C, plaintiff indicates he underwent blood testing, but no liver biopsy was performed.  The failure of medical staff to perform a desired diagnostic test does not constitute an Eighth Amendment violation.  *Clas*, 549 F. App'x at 923 (*citing Estelle*, 429 U.S. at 107) ("The question of whether additional diagnostic techniques or alternate forms of treatment should be employed constitutes 'a classic example of a matter for medical judgment' and does not support an Eighth Amendment claim.").  Finally, plaintiff's Statement of Claims asserts he has the right "not to be tortured with pain and suffering and neglagance [sic] of professional care takers over my welfare."   To the extent plaintiff alleges the defendants were negligent, he fails to state a claim for a violation of the Eighth Amendment.  *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) ("[A] claim of deliberate indifference requires proof of more than gross negligence.").

Supervisory Liability

Plaintiff names as defendants the Okaloosa County Board of Commissioners, Corizon Health Providers, Inc., and Paul Lawson, Director of Okaloosa County Department of Corrections.  Plaintiff does not make any allegations concerning these defendants but presumably seeks to hold them liable in their supervisory capacities. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The mere right to control, without any control or direction having been exercised and without any

failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008), set forth the limited circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim. The causal connection can be established:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

As plaintiff has not made any factual allegations concerning these three defendants, he has failed to establish the causal connection necessary to hold the defendants liable on a theory of supervisory liability.

Plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law. If plaintiff does not have a good-faith belief that he can state an actionable claim, he should file with the court a notice of voluntary dismissal. If plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint.**" Plaintiff must limit his allegations to

claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place the defendants' names in the style of the case on the first page of the complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the "Statement of Facts," plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint. In the section entitled "Statement of Claims," plaintiff must state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for the claimed violations. The amended complaint must contain all of plaintiff's allegations because once an amended complaint is filed all earlier complaints are disregarded. N.D. Fla. Loc. R. 15.1.

Accordingly, it is ORDERED:

1.      The clerk shall update plaintiff's mailing address to: 220 Ann Circle #7, Destin, FL 32541.

2.      The clerk shall forward to plaintiff a § 1983 complaint form. This case number and the words "Amended Complaint" should be written on the form.

3.      Within **thirty (30) days** from the date of this order, plaintiff shall file (1) a notice of voluntary dismissal, or (2) an amended civil rights complaint. If plaintiff files an amended complaint, it must be typed or clearly written and submitted on the court form as instructed above. Plaintiff's failure to comply with this order as

instructed will result in a recommendation that this case be dismissed.

DONE AND ORDERED this 13th day of March, 2015.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**